No. 24,056.

F. L. READER, *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

#### SYLLABUS BY THE COURT.

NEGLIGENCE—*Collision Between Auto and Railroad Train—Auto Driver Negligent as Matter of Law.* The proceedings considered in an action for damages sustained by the driver of an automobile, in a collision with a railway train at a highway crossing, and *held,* the automobile driver was negligent, as a matter of law.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed December 9, 1922. Reversed.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* all of Topeka, for the appellant.

*F. L. Martin, John M. Martin,* and *James N. Farley,* all of Hutchinson, for the appellee.

Reader v. Railway Co.

The opinion of the court was delivered by

Burch, J.:  The action was one for damages for injuries to person and property, sustained by an automobile driver in a collision at a highway crossing with one of the defendant's trains. The plaintiff recovered, and the defendant appeals.

The railroad track extends from northeast to southwest, and the highway from east to west.  The train approached the crossing from the southwest, and the plaintiff from the west.  About a half mile southwest of the crossing the train came through a cut between two bluffs.  At the crossing, the railroad track is four feet above the general level of the ground, and is reached by an approach thirty feet long.  The crossing was very rough, and there was a depression between the rails.  The plaintiff was familiar with the crossing, and knew it was dangerous.  The plaintiff testified he traveled at a good rate of speed until he was within 200 feet of the track.  He then slowed down, looked for a train and saw none, shifted his gears, and proceeded slowly, at the rate of three or four miles per hour.  He testified he had traveled about two-thirds of the distance to the track from the point where he slowed down, when he looked for the last time toward the southwest for a train.  His excuse for not looking again was that he could not take his eyes from the rough crossing long enough to turn around far enough to see if a train were coming.  The jury returned the following special findings of fact:

"1. How fast was the train running at the time of the accident?  A. 50 to 60 miles per hour.

"3. Was the country generally level along both the road and the railroad for at least one-half mile from the place of the accident?  A. Yes.

"5. Is it a fact that the plaintiff could if he had looked have seen the defendant's train all the time after it came out of the cut about one-half mile from the crossing?  A. Yes, if crossing and approach had been constructed as required by law.

"6. How far west of the crossing where the accident happened was the truck when Mr. Reader last looked along the railroad track in the southwesterly direction?  A. 60 to 75 feet.

"7. Was the defendant railroad company or any of the employees negligent?  A. Yes.

"8. If you answer the above question in the affirmative, state if you can which employee was negligent and state in what respect he was negligent. A. Yes, the railroad company by not building proper approach and crossing at point of accident, and engineer and fireman in not sounding proper whistle and ringing of bell."

The plaintiff submits with his brief a plat, drawn to scale, showing

the locations of the train and of the plaintiff at the times mentioned in the testimony. The plat shows the train was 900 feet from the crossing when the plaintiff was 60 feet from it. If, as the plaintiff testified, and as the jury found, he looked for a train when he was approximately 60 feet from the track, he should have seen the train, because it was out of the cut and in plain sight only a little more than one-sixth of a mile away.

The plaintiff testified as follows:

"At the Santa Fe crossing of the township road the top of the rails is about four feet above the level of the road. I was driving east approaching the crossing from the west. The west approach to the crossing is about 30 feet long. The approach will go up the four feet in about 30 feet. The decline begins right at the west rail, drops off from the rail."

The plaintiff testified he shifted his gears because the grade was steep and in bad condition and the crossing was unsafe. He testified his attention was occupied with the grade and with the crossing, and the jury found he could have seen the train but for the condition of the approach and crossing. When the plaintiff was at the foot of the approach, and just before he started up the grade, the train was only 450 feet away. He was then in a place of safety, which he was about to leave for a place of danger of such character he could no longer watch for the on-coming train. Leaving out of account the fact that he had seen, or must be held to the consequences of having seen, the train when he was 60 or 75 feet from the crossing, he ought to have looked before he proceeded to render himself helpless by starting up the 30-foot approach.

The fact that the plaintiff would have been obliged to turn in his seat and look backward is of no consequence. A traveler approaching a railway crossing must be vigilant in trying to see. (*Railway Co. v. Jenkins*, 74 Kan. 487, 488; 87 Pac. 702.) Ordinary prudence requires that an automobile driver use his faculty of sight near the track, where it will be of most benefit to him. (*Gage v. Railway Co.*, 91 Kan. 253, 258, 137 Pac. 938.) The time to look is when he is about to cross. That is the time when he is about to encounter the danger portended by a railway crossing, and it is not enough that he look at a point some distance from the crossing, when looking on nearer approach would reveal danger. (*Railway Co. v. Wheeler*, 80 Kan. 187, 191, 101 Pac. 1001; *Beech v. Railway Co.*, 85 Kan. 90, 95, 116 Pac. 213.)

The condition of the grade and crossing did not excuse the plaintiff's negligence. (*Bunton v. Railway Co.*, 100 Kan. 165, 163 Pac.

801.) When 200 feet from the crossing the plaintiff looked for a train. He could see as far as the cut, and no train was in sight. It is argued that if he misjudged the time it would take to cross the tracks and the time it would take for the train to come, he was not negligent as a matter of law. In support of the argument, the following is quoted in the opinion in the Bunton case:

"If the plaintiff, in the exercise of due care, had assured himself that there was no train coming within reasonable distance and had then attempted to cross and had been stopped and held by this hole or depression in the track until a train not then in sight or hearing within a reasonable distance had come along and wrought this damage, of course the railway company would be liable (*Baughman v. Shenango & Allegheny Railroad Co.,* 92 Pa. St. 335; *Retan v. Railway Co.,* 94 Mich. 146), but that is not the case we have to consider." (p. 170.)

Because the case put was hypothetical, and was not before the court for consideration, no decision of it was rendered. In the Pennsylvania case cited, a horse was trapped on a railroad crossing by defective planking. It could not be extricated before a train came. The track was visible for "a long distance in both directions," and no train was in sight or hearing when the owner of the horse drove him upon the crossing. The court said the rule of stop, look, and listen was not involved, and the only question was whether or not the railroad company was guilty of negligence. In the Michigan case, a pedestrian was trapped on a railroad crossing by defective planking. The accident occurred at a sidewalk crossing in a city. When the plaintiff found he could not extricate his foot, he signalled the train, which was 584 feet away, and was running at a speed of 12 miles per hour, but was gaining speed. The court held the question of the plaintiff's negligence in going on the track in front of a train so far away was one for the jury, but said the case was not like one in which a person attempts to drive a team across a railroad track in front of an approaching train. The Pennsylvania case was decided in 1879, and the Michigan case in 1892. They were both clear cases of entrapment and, neither singly nor considered together, furnish the basis for modification of any of the rules heretofore announced by this court involving automobile accidents at railroad crossings. Besides this, the court has been called on to consider the subjects of error in judgment and miscalculation of speed by an automobile driver who goes upon a crossing in front of a railroad train, and has held the rule in street-railway crossing cases does not apply. (*Kirkland v. Railway Co.,* 104 Kan. 388, 393,

179 Pac. 362; *Moore v. Railways Co.,* 108 Kan. 503, 196 Pac. 430.) In the Moore case it was said:

"One who attempts to cross a railroad track when he knows a train is approaching does so at his peril, and if a collision results it is deemed to be the consequence of his own negligence, notwithstanding he may have miscalculated the distance of the train." (p. 504.)

In this instance, when the plaintiff was 200 feet from the crossing he was bound to anticipate that a train might emerge from the cut the next instant and reach the crossing in thirty seconds. When he was 60 feet from the crossing he looked along the track toward the southwest for a train. He had not yet reached the approach, and should have seen the train, which was 900 feet away. He should have improved the opportunity to look when he was 30 feet from the crossing, and before he was obliged to devote his faculties to surmounting the difficulties presented by the grade crossing. The result is, the plaintiff was guilty of contributory negligence, as a matter of law.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for defendant.