No. 36,539

Albert Horton, *Appellant,* v. The Atchison, Topeka & Santa Fe Railway Company, *Appellee.*

(168 P. 2d 928)

Opinion filed May 4, 1946.

*Russell L. Hazzard,* of Dodge City, argued the cause for the appellant.

*Henry Schulteis, Jr.,* of Topeka, argued the cause, and *C. J. Putt, W. E. Treadway,* both of Topeka, and *Carl Van Riper,* of Dodge City, were on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This is an appeal from an order sustaining defendant's demurrer to plaintiff's second amended petition.

The action was one to recover damages to property resulting from a collision at a railroad - crossing. The petition is short. Omitting formal parts and allegations of damages, the petition reads:

"On the 23rd day of November, 1944, about 2:30 p. m. of said day, plaintiff's semi-trailer truck unit, driven by M. P. Phillips, an employee of plaintiff, while traveling east on the east and west road and while crossing defendant's railroad track at a point about three-fourths of a mile southwest of Wright, Kansas, was struck by defendant's passenger train, which said passenger train plaintiff believes and therefore alleges was train number 4.

"At said intersection, the defendant's tracks run in a direction from the southwest to the northeast; at a distance of about 2,000 feet southwest of said intersection said tracks begin curving to the right as one faces the southwest and at a distance from said intersection of about 3,000 feet said track has curved a considerable distance to the right and is still curving to the right.

"At said intersection three tracks cross said highway upon which the plaintiff's truck-trailer unit was traveling; the track to the north is a side track and the other two tracks are main tracks and used by passing trains.

"On said side track the defendant had placed about 45 box cars, adjacent to each other, to the southwest of said intersection, the nearest box car being approximately 90 feet from said intersection and the most distant box car about 1,700 feet from said intersection; the defendant had also placed a great number of box cars on said side track northeast of said intersection, the exact number plaintiff does not know, the nearest car of which was approximately 90 feet from said intersection.

"As the said M. P. Phillips approached said intersection, he stopped with the tractor of his unit within 5 feet of said sidetrack; he looked both ways for approaching trains on either of said other two tracks; when he attempted to look to the southwest his little grandson, who was with him, was in the way, Phillips moved the boy back against the seat and looked out his right window and could see down the track about 300 or 400 feet; he saw no train coming, he then looked back over said row of box cars for smoke or other signs of an approaching train and heard none; he then started on across said intersection and when he had gotten almost across said train struck the right rear corner of said semi-trailer; that had the said M. P. Phillips gotten out of said truck, when he stopped and walked upon main tracks of said defendant, he could not have seen said train because of said curve and said box cars on said switch and the rate of speed at which said train was traveling.

"The defendant or its employees did not blow the whistle or ring the bell on the locomotive of said train from the time said train was within 80 rods of said intersection until said train was less than 100 feet of said intersection; that said train was running at a speed of approximately 70 miles per hour; that the collision above set out was the direct and proximate result of the negligence of the defendant in failing to blow said whistle, ring said bell and running at said speed under the facts and circumstances above set out."

The demurrer challenged the sufficiency of the petition to state a cause of action. It will be observed the specific acts of negligence charged against defendant are the failure to blow the whistle

and ring the bell of the locomotive and the speed of the locomotive under the facts and circumstances stated in the petition. In substance it is defendant's contention that, conceding for the purpose of the demurrer defendant was negligent as charged, the allegations of the petition clearly disclose appellant's driver was guilty of contributory negligence without which the accident would not have occurred.

In passing on the demurrer all facts well pleaded are, of course, admitted to be true. Furthermore, plaintiff is entitled to have the petition interpreted liberally in his favor with respect to any indefiniteness or uncertainty in its allegations and to have all inferences reasonably to be drawn therefrom resolved in his favor.

The petition briefly and plainly discloses the existing conditions as the driver approached the sidetrack from the west. There were three tracks, the sidetrack and two main tracks. The train approached the intersection from the southwest on the middle track, which was the nearest main track to appellant's driver as he approached from the west. We shall refer to that track as the main track. The sidetrack was unoccupied for a distance of ninety feet to each side of the intersection. From that point to the southwest for a distance of approximately 1,700 feet "defendant had placed" about forty-five boxcars on the sidetrack. At the intersection the tracks ran from the southwest to the northeast. At a point approximately 2,000 feet southwest of the intersection the tracks *began* curving to the right as one faces the southwest. The curve continued for a distance exceeding 1,000 feet. In a similar manner "defendant had placed" boxcars on the sidetrack to the left or northeast of the intersection. For the purpose of the demurrer the parties stipulated the distance between the east rail of the sidetrack and the west rail of the main track was nine feet measured at right angles. Appellant's driver stopped at a point five feet west of the sidetrack and looked both ways for trains. He looked out of the right window and he could see only about 300 or 400 feet down the main track to the southwest. He saw no train. He looked back over the boxcars for smoke or other signs of an approaching train and heard none. He started across the tracks. The train struck the right rear corner of his semitrailer.

We shall proceed directly to a consideration of the negligence of appellant's driver. Did he do anything after stopping at the sidetrack and as he was nearing the main track and his vision was im-

proving to assure himself he could proceed over the main track with safety? The petition does not allege he stopped or looked and listened thereafter. It discloses he could not assure himself of safe passage over the main track from the point at which he stopped, looked and listened.

If on a trial appellant should prove only the facts alleged, could he recover? Appellee contends he could not. The duty to exercise care in crossing railroad tracks is a continuing duty. A few of the numerous cases so holding are *Railway Co. v. Wheeler,* 80 Kan. 187, 191, 101 Pac. 1001; *Beech v. Railway Co.,* 85 Kan. 90, 94, 116 Pac. 213; *Rule v. Railway Co.,* 107 Kan. 479, 192 Pac. 729; *Reader v. Railway Co.,* 112 Kan. 402, 404, 406, 210 Pac. 1112; *Buchhein v. Atchison, T. & S. F. Rly. Co.,* 147 Kan. 192, 196, 75 P. 2d 280; *Richards v. Chicago, R. I. & P. Rly. Co.,* 157 Kan. 378, 384, 139 P. 2d 427.

The last cited cases and many others are in harmony with the generally well-established rule that it is not enough to exercise diligence at a point where it is unavailing when the exercise of diligence at a more advantageous point would reveal the danger. This principle is so deeply grounded in our early and recent decisions that extended quotations from opinions are deemed unnecessary. The late Chief Justice Johnston, speaking for the court, stated the early-established rule briefly and simply in *Beech v. Railway Co.,* supra, as follows:

"A railroad track is itself a warning of danger to an approaching traveler and it is the duty of one about to cross, who is competent to exercise care for his own protection, to use his faculties of sight and hearing in the manner of an ordinarily prudent person, *and the omission to do so is an omission of ordinary care which will bar a recovery for injuries resulting from a collision with a train, notwithstanding the negligence of the railroad company in failing to sound a whistle eighty rods from the crossing.*

"The fact that the view of one approaching a railroad track is obstructed for a short distance requires the exercise of greater vigilance and care on his part to learn if there is a present danger in crossing, and it is incumbent on him *to look again* when he passes the obstruction and when an opportunity exists to look and listen for an approaching train." (Syl. ¶¶ 1, 2.) (Our emphasis.)

See earlier cases cited in above opinion, page 94.

It is common knowledge that the hazard to appellant's driver was increased by the boxcars and by the fact the track ran through the intersection at an angle. These facts required vigilance proportionate to the hazard. The fact the driver might have been obliged to turn in his seat and look backward in order to maintain the neces-

sary lookout for an approaching train did not relieve him of the duty to exercise such diligence. (*Reader v. Railway Co.*, supra, p. 404.)

In *Railway Co. v. Wheeler*, supra, it was said:

"It is not enough for a traveler to look where an approaching train cannot be seen or to listen when it cannot be heard. Nor will it suffice that one has looked some distance away from the crossing when a view on a closer approach would have revealed the danger. (*Railroad Co. v. Holland*, 60 Kan. 209; *Railroad Co. v. Entsminger*, 76 Kan. 746.)" (p. 191.)

In the Reader case, *supra*, we stated:

"A traveler approaching a railway crossing must be vigilant in trying to see. (*Railway Co. v. Jenkins*, 74 Kan. 487, 488, 87 Pac. 702.) Ordinary prudence requires that an automobile driver use his faculty of sight near the track, where it will be of most benefit to him. (*Gage v. Railway Co.*, 91 Kan. 253, 258, 137 Pac. 938.) The time to look is when he is about to cross. That is the time when he is about to encounter the danger portended by a railway crossing, and it is not enough that he look at a point some distance from the crossing, when looking on nearer approach would reveal danger. (*Railway Co. v. Wheeler*, 80 Kan. 187, 191, 101 Pac. 1001; *Beech v. Railway Co.*, 85 Kan. 90, 95, 116 Pac. 213.)" (p. 404.)

In *Cooper v. Railway Co.*, 117 Kan. 703, 232 Pac. 1024, the familiar rule was again stated as follows:

"Rule followed that where one is about to cross a railway track and obstructions to his sight and hearing prevent him from assuring himself that no train is approaching, it is negligence for him to risk his life by attempting to cross without otherwise ascertaining that it is safe to do so." (Syl. ¶ 2.)

See, also, *Brim v. Atchison, T. & S. F. Rly. Co.*, 136 Kan. 159, 163, 12 P. 2d 715.

In *Rule v. Railway Co.*, 107 Kan. 479, 192 Pac. 729, we said:

"When the plaintiff stopped to look and listen he was confronted by standing cars massed on the three tracks for long distances north and south of the street, and by a narrow way through which other tracks to be crossed were visible. Listening could give but doubtful information concerning the peril beyond the lines of cars, and looking, which was also essential, could give none at all. The lines of cars had been cut for the crossing, the cars were standing still, and there was no indication that they would be moved. So far as the plaintiff was apprised, whatever danger there might be in attempting to cross lay beyond. Under these conditions, it was important for the plaintiff to further inform himself at track three, and if he did not choose to stop there in order to use his eyes, he should have had his automobile under such control that he could stop quickly, if necessary, as soon as he could see. The rules of law governing the case have been stated so many times, it is not necessary to do so again. Applying the law to the facts, but one sound conclusion is possible, and that is, the plaintiff was guilty of negligence bordering closely on recklessness." (p. 480.)

In *Ek v. Chicago, R. I. & P. Rly. Co.*, 132 Kan. 177, 294 Pac. 663, the driver, a fourteen-year-old boy, could have seen the train from a more remote point and also immediately before entering upon the track. Mr. Justice Smith, in writing the opinion of the court, said:

"This court is not prepared to say that ordinary care and precaution did not demand of Chester that he proceed to this track *slowly enough to stop just before his car got into a position where it could be hit by a train, and look down the track to see if a train was approaching. We must conclude that his failure to do so was negligence that cost him his life."* (p. 179.) (Emphasis supplied.)

It is thus apparent this court has never adopted the rigid and strict rule obtaining in some jurisdictions which requires a traveler to stop under all circumstances before entering upon a railroad track. It is committed to the more liberal rule, and we think justly, which makes it the duty of one about to cross a railroad track to first assure himself he can do so with safety. This rule, however, does require that the diligence of the traveler in so assuring himself must be commensurate with the hazard. A few of the numerous cases so holding are *Railway Co. v. Wheeler*, 80 Kan. 187, 191, 101 Pac. 1001; *Wehe v. Railway Co.*, 97 Kan. 794, 156 Pac. 742; *Williams v. Electric Railroad Co.*, 102 Kan. 268, 170 Pac. 397; *Reader v. Railway Co.*, 112 Kan. 402, 404, 210 Pac. 1112; *Brim v. Atchison, T. & S. F. Rly. Co.*, 136 Kan. 159, 165, 12 P. 2d 715; *McCune v. Thompson,* 147 Kan. 57, 61, 62, 75 P. 2d 294; *Dickerson v. M.-K.-T. Rld. Co.*, 149 Kan. 314, 318, 87 P. 2d 585; *Johnson v. Union Pacific Rld. Co.*, 157 Kan. 633, 642, 644, 143 P. 2d 630.

The last stated rule requires that, if the hazard is such that a driver cannot by the use of sight or hearing assure himself no train is approaching, he must stop or otherwise ascertain that it is safe to cross. This rule also is stated in the cases last cited. A few others in which this rule has been applied are *Bunton v. Railway Co.*, 100 Kan. 165, 168, 163 Pac. 801; *Acker v. Railroad Co.*, 106 Kan. 401, 188 Pac. 419; *Cooper v. Railway Co.*, 117 Kan. 703, 232 Pac. 1024; *Clark v. Atchison, T. & S. F. Rly. Co.*, 127 Kan. 1, 5, 272 Pac. 128; *Hartman v. Kansas City, L. & W. Rly. Co.*, 132 Kan. 182, 185, 294 Pac. 913.

See, also, later cases to the same effect cited in the McCune and Dickerson cases, *supra.*

The petition in the instant case discloses the driver could not as-

sure himself of safe passage over the main track from where he stopped because at that point his view was considerably obstructed. Here again we believe it unnecessary to quote extensively from many decisions. A few brief quotations may, however, be helpful. The often-repeated rule is plainly stated in the Williams case, *supra,* as follows:

"It is not required in this state in all cases that one about to cross a railway track must stop, look and listen to assure himself that he can cross in saftey; *but where obstructions to his view prevent him from otherwise ascertaining the fact of safety, then it is his duty to stop to make sure of his safety before crossing."* (Syl. ¶ 2.) (Our emphasis.)

Here the distance between the sidetrack and the main track rails was nine feet. It is common knowledge that boxcars overhang the rails to some extent. Appellant's driver, therefore, could not obtain a complete view of the entire 2,000 feet of the main track to the southwest until the portion of the truck in which he was seated passed the boxcars. When the front part of his vehicle reached a point where it remained safe from contact with a train approaching on the main track the driver either could, or could not, have seen the oncoming train. We shall first consider the driver's duty in the event he was not in a position to see the train when the front part of his vehicle had proceeded that far.

The precise question of a driver's duty under such circumstances confronted this court many years ago in the noted case of *Wehe v. Railway Co.,* 97 Kan. 794, 156 Pac. 742. There the driver moved slowly toward the tracks. He listened and heard no engine or cars. He looked and could not see north or south because of buildings. From the front end of his automobile to where he sat the distance was about eight feet. He could not see along the track until the front end of his automobile was where a passing railroad car would strike it. He did not stop nor get out of his automobile to ascertain whether or not there was danger. One of his fellow workmen, who was watching for trains, called to warn him of the oncoming engine but the driver did not understand him. The engine bell was not ringing. No whistle had been sounded. When he saw the railroad cars approaching he stopped. The automobile, however, was caught by the stirrup of the first railroad car and the automobile was damaged. The plaintiff was bruised. This court said:

"The only question in the case is, Was the plaintiff, as a matter of law, required to get out of his automobile and ascertain whether or not an engine or cars were coming?" (p. 795.)

Many former opinions of this court were reviewed and it was held:

"The driver of an automobile can not recover damages for injury to himself and his machine, where he approaches a railway track at a place at which he cannot see along the track until his automobile is in a place where it will be struck by a passing engine or cars, *and does not stop his car to ascertain whether or not there is danger, although he listens before going into the place of danger and does not hear any engine or cars coming.*" (Syl.) (Our emphasis.)

In the course of the opinion our former decisions were reviewed. It was frankly recognized and emphasized that the question of a driver's duty to stop is ordinarily one for the consideration of the jury under all the circumstances, but the court said:

"Under the circumstances surrounding this case, the plaintiff, being unable to see the engine and cars on the track until his machine was in a place of danger, was as a matter of law required to stop his automobile and see whether there was an engine or cars coming before he drove his automobile on the defendant's track." (p. 797.)

The doctrine announced in the Wehe case and earlier decisions upon which it was based has become a definite part of the established railroad law of this state. Probably no other decision of this court has been more consistently followed in this state or been more frequently cited and quoted with approval by other courts. Mr. Chief Justice Dawson, shortly before retiring, had occasion to comment upon the Wehe case in *Johnson v. Union Pacific Rld. Co.,* supra, and said:

"Our leading earlier crossing-accident cases were collected and cited by the late Mr. Justice Marshall in *Jacobs v. Railway Co.,* 97 Kan. 247, 154 Pac. 1023; and *Wehe v. Railway Co.,* 97 Kan. 794, 156 Pac. 742; so that this state has a consistent body of law relating to the duty of one about to cross a railway track to assure himself that he may safely do so; his diligence must be commensurate with the hazard; and if he fails in that duty the negligence of the railway company, whatever it may have been, will not exempt him from being guilty of contributory negligence as a matter of law." (p. 641.)

The dissenting opinion in the Johnson case pertained to the absence of a customary flagman at a city intersection, a question in nowise involved in the instant case. See, also, *McCune v. Thompson,* 147 Kan. 57, 59, 75 P. 2d 294, and *Richards v. Chicago, R. I. & P. Rly. Co.,* 157 Kan. 378, 384, 139 P. 2d 427. In the Richards case Mr. Justice Harvey, now Chief Justice, speaking for the court, quoted from the McCune case, *supra,* as follows:

" 'It has long been settled law in this state, as throughout this country generally, that a railway track is itself a warning of danger. (*Bazzell v. Atchison, T. & S. F. Rly. Co.,* 134 Kan. 272, 5 P. 2d 804.) A person about to cross a railway track must first assure himself that no train is approaching and that it is safe to cross. If he attempts to cross without first making sure that he can safely do so, he is guilty of negligence, and he will not be permitted to penalize the railway company if an accident occurs. Our own reports are laden with decisions to this effect. The older cases were collated by the late Mr. Justice Marshall in *Jacobs v. Railway Co.,* 97 Kan. 247, 154 Pac. 1023, and *Wehe v. Railway Co.,* 97 Kan. 794, 156 Pac. 742.' (See, also, many other of our cases cited later in the opinion.)" (p. 384.)

In referring to the driver appellant argues "he was threatened by the possible train on the switch." If the facts warranted such a contention appellant would, of course, be entitled to have that circumstance considered. An appropriate allegation to present that issue could easily have been made. The petition discloses the boxcars were standing on the sidetrack three-fourths of a mile southwest of Wright, Kansas. Appellant, for reasons of his own, saw fit not to allege a train was on the sidetrack. Nor does the petition contain the slightest intimation the boxcars were moving or that the driver believed they might be moved. On the contrary the petition expressly states, " . . . defendant *had placed* about 45 boxcars" to the southwest and " . . . defendant *had also* placed a great number of boxcars on said side track northeast of said intersection." (Our italics.) The boxcars had been placed ninety feet from the intersection on both sides. Under the allegations of this petition the statement of this court in *Rule v. Railway Co.,* 107 Kan. 479, 480, 192 Pac. 729, involving a number of tracks on which cars were standing which obstructed the driver's view, is pertinent. We there said:

"The lines of cars had been cut for the crossing, the cars were standing still, *and there was no indication that they would be moved. So far as the plaintiff was apprised, whatever danger there might be in attempting to cross lay beyond.*" (p. 480.) (Emphasis supplied.)

Under the petition as framed we would not be justified in drawing the inference that the boxcars which "had been placed" on the sidetrack out in the country ninety feet from each side of the intersection constituted a live train. In fact, the natural inference to be drawn from the petition is clearly to the contrary.

It may also be well to observe the petition does not allege when the driver stopped at a point west of the boxcars that he looked to the southwest in order to ascertain whether a train was approaching

around the curve before it passed out of view east of the boxcars standing on the sidetrack. Nor is there any allegation such a view was inaccessible or obscure.

In view of the petition as framed a majority of this court has no hesitancy in saying the petition fails to disclose any vigilance of the driver after he stopped and before he reached the point where his vehicle was in danger of being struck. It does not show he stopped within that space to look or listen. In fact it shows the contrary.

What was the driver's status and conduct thereafter? The petition states the tracks ran through the intersection from the southwest to the northeast; that the tracks *began to curve* to the right at a point 2,000 feet southwest of the intersection. In the absence of other allegations the driver's view to the southwest was, therefore, unobstructed for a distance of 2,000 feet after he passed the boxcars. The train struck the rear corner of the semitrailer. What vigilance does the petition disclose the driver exercised to avoid the collision after he reached a point where his view was unobstructed? None whatever. What vigilance does the petition disclose he exercised while negotiating the main track? None at all. His duty to assure himself he could proceed with safety was a continuing one. Assuming for the moment there has been no legal duty to stop before entering upon the main track, how could he evade his legal duty to look for a train when he reached a point where he unquestionably could see? The late Chief Justice Johnston, speaking for this court, stated the previously well-established and unvarying rule of law in *Beech v. Railway Co.*, 85 Kan. 90, 116 Pac. 213, as follows:

"Duty of the traveler to look and listen *is absolute where an opportunity exists.* . . . As we have seen, *it is an unbending rule of law* that if one competent to exercise care for his own protection goes upon a track in front of an approaching train without looking or listening it is contributory negligence." (pp. 95, 96.) (Emphasis supplied.)

Appellee insists facts alleged in the petition and simple mathematical calculation conclusively show the train must have been in plain view before the driver entered upon the main track and that the driver could have seen it had he looked. It is alleged the train was traveling seventy miles per hour. At that speed it would have required almost twenty seconds for it to travel 2,000 feet, the distance between the point where the train came into view and the intersection. In view of all allegations admitted by the demurrer the conclusion that the driver could have seen the train after he passed the boxcars, if he had looked, is inescapable.

Traveling at the low rate of five miles per hour the truck would have traveled 7.33 feet per second or 146.60 feet in twenty seconds. At the exceedingly low rate of three miles per hour it would have traveled 4.4 feet per second or 88 feet in twenty seconds. The petition does not allege the length of the truck and semitrailer but under the law its total length inclusive of front and rear bumpers could not have exceeded thirty-five feet. (G. S. 1943 Supp. 8-5,116.) The driver either did not look, and he does not allege he did, or he knowingly drove across the main track directly in front of the speeding train. In either event his negligence at least contributed to the collision. A person is presumed to have seen what he could have seen had he looked. (*Young v. Railway Co.*, 57 Kan. 144, 45 Pac. 583; *Atkinson v. Railway Co.*, 103 Kan. 446, 173 Pac. 914; *Buchhein v. Atchison, T. & S. F. Rly. Co.*, 147 Kan. 192, 195, 75 P. 2d 280.)

"One who sees a closely approaching train and drives onto the crossing in an attempt to pass over ahead of the train is likewise guilty of contributory negligence that will bar a recovery for the injury and loss resulting from the collision." (*Beech v. Railway Co.*, supra, p. 96.)

See, also, *Moore v. Railways Co.*, 108 Kan. 503, 504, 196 Pac. 430.

A person who attempts to negotiate a railroad crossing directly in front of a rapidly moving train, of which approach he is or should be aware, is guilty of contributory negligence which bars recovery. (*Railway Co. v. Schriver*, 80 Kan. 540, 103 Pac. 994; *Jacobs v. Railway Co.*, 97 Kan. 247, 154 Pac. 1023; *Buchhein v. Atchison, T. & S. F. Rly. Co.*, supra, p. 196; *Richards v. Chicago, R. I. & P. Rly. Co.*, supra.)

While these principles of law are well established we are not now concluding appellant cannot state a cause of action. We do say the allegations of the petition, together with reasonable inferences to be drawn therefrom in his favor, do not justify his looking and listening only from the point at which he previously had stopped and from which he could not be assured he could proceed with safety.

Briefly stated, appellant asks this court to say that if he proves what he has pleaded he is entitled to recovery. That would mean a person about to cross a main railroad track need look only at a point from which he has no assurance he can cross such track with safety. In this case it would mean far more than that. It would mean he could recover on a petition which demonstrates such a look was wholly insufficient to assure his safety. It would mean this court

has completely repudiated the rule of law that the duty to look is a continuing one. This would indeed be a dangerous departure from a well-settled, just and generally accepted principle of law. It is a departure to which the majority of this court is not willing to subscribe.

Appellant argues if the locomotive whistle had been blown eighty rods from the crossing, as required by G. S. 1935, 66-2,120, the driver "would have heard it and would not have gone on across the tracks." The contention may not prove to be very helpful to appellant as it would indicate the train traveling at the rate of 102.3 feet per second was only 1,320 feet from the intersection before the driver started across any of the tracks. At any rate the failure of appellee to blow the whistle or ring the bell would not permit appellant to recover when his driver's failure to look as he proceeded likewise contributed to the collision. (*U. P. Rly. Co. v. Adams*, 33 Kan. 427, 6 Pac. 529; *Beech v. Railway Co.; Jacobs v. Railway Co.; Wehe v. Railway Co.; Dickerson v. M.-K.-T. Rld. Co.; Johnson v. Union Pacific Rld. Co.*, p. 643, omnia supra; 52 C. J. § 1901, p. 325.)

In the instant case the petition expressly states where the driver stopped and where he looked and listened. That was at a point from which he could not be assured he could cross the main track with safety. The petition then contains allegations intended to relieve the driver of his duty to stop thereafter, in the event it became necessary for his safety, and also to relieve the driver of his continuing legal duty to look and listen thereafter. The portion of the petition designed to relieve the driver of his continuing duty to exercise vigilance reads:

". . . that had the said M. P. Phillips gotten out of said truck, when he stopped and walked upon main tracks of said defendant, he could not have seen said train because of said curve and said boxcars on said switch and the rate of speed at which said train was traveling."

In the first place the allegation is argumentative. It constitutes a contention concerning what the driver would not have seen *if* he had then walked to the main track. It is an argument the train at that time would have been out of view west of the boxcars. It is not an allegation of fact relative to what the driver saw as his vehicle proceeded or what he could have seen when his vehicle actually reached a place of safety near the main tracks or when the vehicle was upon the main track. It is elementary that a demurrer does not admit argumentative allegations but only facts well pleaded. (49

C. J. § 89, p. 91.) But let us pass the argumentative allegation. The petition discloses the vehicle and train met on the track.

In the second place the allegation could in nowise relieve the driver of his duty to stop, if necessary, while he was proceeding. Nor could it relieve him of his continuing duty to look and listen as he was actually proceeding. The reason is obvious. If, when he stopped west of the sidetrack, he had gotten out of his vehicle and gone to the main track to look, as he suggests, and then returned to his vehicle and thereafter had driven to the main track, would the hazard necessarily have been the same at the main track? Not at all. In the length of time required to make such trips a train traveling at the rate of 102.3 feet per second obviously would have traveled a considerable distance. Manifestly in this case it indeed would have been wise for the driver to have gone to the main track when he stopped in order to ascertain whether a train was *then* in view. Clearly, however, such an act could not relieve him of his continuing duty to look and listen thereafter in order to ascertain what changes, if any, had developed in the interim. That is the precise reason for the wholesome rule which requires a driver to continue to look and listen and especially to do so at a point near the track where looking will be most helpful. Furthermore, the driver, as already stated, had not only the duty to look until he reached a point of safety near the main track but that duty continued until he had passed over the main track and he had reached a place of safety. If appellant is required to prove only what he has pleaded he may recover damages when he looked and listened only from a point at which, his petition discloses on its face, he could not proceed with safety.

"An act of negligence proximately contributes to the injury when without the act of negligence the injury would not have been inflicted." (*Murray v. G. C. & S. F. Ry. Co.,* 73 Tex. 2, 11 S. W. 125, syl. ¶ 4.)

The majority of this court is not unmindful of the fact that contributory negligence is an affirmative defense and that the burden of proving it ordinarily rests upon the defendant. It is, however, equally well established that where a petition is so framed as to disclose contributory negligence on its face it is demurrable. (41 Am. Jur., Pleading, § 212; 38 Am. Jur., Negligence, § 270, p. 960; and *Frazier v. Cities Service Oil Co.,* 159 Kan. 655, 157 P. 2d 822, citing numerous cases.) This rule applies with equal force to contributory negligence in railroad crossing cases. (*Railway Co. v. Schroll,* 76 Kan. 572, 92 Pac. 596; *Whitcomb v. Atchison, T. & S. F. Rly. Co.,*

128 Kan. 749, 752, 280 Pac. 900; *Jones v. Atchison, T. & S. F. Rly. Co.*, 129 Kan. 314 to 316, 282 Pac. 593; 5 Elliott on Railroads, 3d ed., § 2805, pp. 812, 813.)

From what has been said herein it must not be inferred a petition ordinarily is required to negative contributory negligence. In this case, however, the petition describes the hazardous circumstances confronting the driver before he started to cross the sidetrack. It expressly states the precise point at which he stopped. That is the only point at which it states he stopped or looked or listened. It alleges no vigilance thereafter. Instead of alleging facts disclosing exercise of vigilance thereafter it pleads a contention intended to relieve the driver of his duty to look and listen thereafter.

In distinguishing this case from others, whether from this or other jurisdictions, it will be exceedingly helpful to remember the instant case is not one in which the driver stopped as near the main track as he could with safety and then looked and listened. It will be equally well to remember that cases showing danger of entrapment of a part of the vehicle by a train on the sidetrack in the event a person had driven onto the sidetrack to obtain a better view clearly are not in point. This petition discloses on its face the driver looked and listened at a point from which he could not assure himself he could proceed over the main track with safety; that he then started across the tracks and drove directly in front of a rapidly approaching train. To hold this petition to be good as now framed would establish a dangerous and unjust doctrine. It would encourage reckless driving and result in untold injury. This will be increasingly true for the obvious reason that business and the traveling public generally are demanding faster and faster trains.

It would be no kindness to appellant but a distinct unkindness and injustice to him and all parties concerned, including the trial court, for this court to hold the petition to be good and to later sustain a demurrer to evidence which proved its allegations. If the facts warrant, appellant has ample time to amend his petition so as to state a cause of action.

The order sustaining the demurrer to appellant's second amended petition is affirmed.

HARVEY, C. J. (dissenting): Defendant did not attack the petition by motion of any kind, but filed a general demurrer thereto. In this situation it is the settled rule that the petition is to be construed

most favorably to plaintiff. The opinion as written states this rule well and then, as I read it, proceeds to violate it. We note some of the instances.

The petition alleged that defendant had placed on the side track about 45 cars adjacent to each other so as to cover the track for about 1,700 feet to the southwest, and a "great many" (the exact number being unknown) to the northeast of the intersection, leaving an opening at the intersection of about 180 feet between the two strings of cars. The opinion discounts argument of appellant's counsel that plaintiff's driver had to keep in mind the possibility that the cars on the side tracks might be moved while he was crossing and says that the appellant, "for reasons of his own," did not allege that a train was on the sidetrack. The more appropriate observation would have been that if defendant wished it known in the record whether an engine was attached to the string of cars to the northeast he could have obtained that information by a motion requiring a definite statement on the point, and "for reasons of its own" made no such motion. From the petition it appears that the string of cars to the northeast was so long the driver could not estimate the number. The reasonable inference is that he did not know whether an engine was attached to the far end of that string of cars, and defendant did not care to have him state that. The opinion concludes that the cars on the sidetrack were standing without an engine attached and that there was no indication "the driver believed they might be moved." The conclusion is not justified either by the petition or the rules of law pertaining to its construction.

Again it is observed in the opinion that the petition does not allege that when the driver stopped and looked to the southwest for a train that he also looked past the string of boxcars to see if a train was approaching on the curve and did not allege whether such a view was accessible. Again, had defendant desired that situation to be disclosed by the evidence it could have moved the court to require plaintiff to state the facts pertaining thereto. This it did not do, we may assume, for reasons of its own. The observation is one which the court is not justified in making.

In the opinion some calculations are made from which the conclusion is reached that the driver started across the track on which the train was moving at a time when the onrushing train was in plain sight. These calculations are speculative, inappropriate and of a type which I think this court is not justified in making. It is

said the overall length of plaintiff's semitrailer could not have exceeded 35 feet, citing G. S. 1943 Supp. 8-5,116, but taking no account of the proviso of that section. It is possible that the length of plaintiff's truck was not limited to 35 feet by the statute. If my memory is correct, counsel for appellant in his argument here stated the overall length of the semitrailer to be 42 feet. But from the record before us we know nothing definite about its length and defendant made no move to have that information placed in the record. There is no occasion for the court to speculate on its length. The computation of the distance the semitrailer would travel at the average rate of five miles per hour, or three miles per hour, is purely speculative. There is nothing in the petition about the speed of the semitrailer as it crossed the intersection, or at any time. It is hardly to be assumed that from a standing position the semitrailer would start at five or three miles per hour, nor is there any reason to say from this record that it would or would not have attained that speed in twenty seconds, let alone traveling the distance stated as an average speed. In *Ferguson v. Kansas City Public Service Co.*, 159 Kan. 520, 156 P. 2d 869, one question involved at the trial was how long it would take a standing streetcar to be started by the operator and to travel its length. The jury found (page 527) that after a passenger had alighted from a streetcar it would take the operator two seconds to close the door, then two seconds to turn the lever and start the car in motion, and then ten seconds for the car to travel 40 feet, its approximate length. I do not think this controlling; indeed, it isn't, but is simply illustrative of the fact that the computation of where the semitrailer was at a certain time cannot well be determined by an average speed. Here we know nothing about the condition of the highway, whether it was paved or otherwise; or of the crossing, whether it was smooth or rough; nor do we know about the weight of the semitrailer, with its load, if it was loaded; nor at what speed it traveled; hence the court's conclusion as to where the semitrailer was when the railroad train came around the curve 2,000 feet from the intersection is purely speculative. Those matters are to be determined in trial courts upon evidence offered.

The opinion treats the crossing as though it had but the two tracks —a side track and one main track—and that plaintiff's main duty was to look to the southwest for an approaching train. We see nothing in this petition to justify that interpretation. From the

petition it is clear there are three tracks, and there is nothing to indicate that plaintiff's driver had any reason to think that a train was more likely to come from the southwest than from the northeast, or whether it would be on the main track nearest to him or the one farthest away. In short, on this point, as well as some others, the opinion appears to view the situation after it occurred as distinct from the way plaintiff's driver was compelled to view it before it occurred.

The opinion quotes an allegation of the petition to the effect that had the driver stopped and walked forward to the track and looked he could not have seen the train approaching, because of the curve in the track and the boxcars on the switch, at the speed at which the train was approaching, and treats this as argumentative and a negative allegation not admitted by demurrer. We think that position is not well taken. This court had before it a somewhat similar question in *Torgeson v. Missouri-K.-T. Rld. Co.*, 124 Kan. 798, 262 Pac. 564. Evidence was introduced and findings made by the jury upon it, the judgment for plaintiff was approved by the trial court, and affirmed here. The case is reported in 55 A. L. R. 1335, and beginning at page 1340 an annotation sets out a number of cases in harmony with our decision. The opinion on this point was later approved by the United States Supreme Court in *Pokora v. Wabash Ry. Co.*, 292 U. S. 98, 104, 78 L. Ed. 1149, 1154, 54 S. C. 580, 583, and by the Supreme Court of Missouri in *Sing v. St. Louis-San Francisco Ry. Co.* (Mo.), 30 S. W. 2d 37, 42, and by the Supreme Court of Oregon in *Fish v. Southern Pacific Co.*, 173 Ore. 294, 143 P. 2d 917, 925, and is cited in 44 Am. Jur. 804, 805, in support of the text in harmony with the opinion. The allegation should have been regarded as one of fact and admitted by the demurrer.

There are other matters which might be pointed out, but I shall not prolong this opinion further than to say that upon the whole the opinion construes the petition, and in addition to that, some matters which are not in it, more strongly against plaintiff and its driver— just as though he were assumed to have been negligent—rather than to construe the petition and omit extraneous matters not in it as favorably to plaintiff as they can be made, and as though he were endeavoring, at least, to use due care.

We have trial courts in this state to try questions of fact. Whatever may be the ultimate outcome of this case, a point upon which I express no view, I think plaintiff is entitled to try his case before

a court equipped to try facts and not have this court speculate on facts and suggest and construe facts not pleaded, or construe facts pleaded against a party which should be construed in his favor.

Another reason prompts my dissent. During the first 47 years of the judicial history of this state this court recognized three degrees of negligence—slight, ordinary and gross— and held the fact that plaintiff was guilty of slight negligence did not defeat his recovery from one guilty of ordinary negligence or of gross negligence; also held the fact that plaintiff was guilty of ordinary negligence did not defeat his recovery from one guilty of gross negligence; also held that where both plaintiff and defendant were guilty of the same class of negligence there could be no recovery. Throughout this time the court was holding that this classification of negligence and the adjudged rights of the parties thereunder did not constitute "comparative negligence," and further, that the doctrine of comparative negligence was not recognized in this state. Our opinions disclose that the soundness of these conclusions was difficult for some of our attorneys to understand.

In *Railway Co. v. Walters,* 78 Kan. 39, 96 Pac. 346 (decided May 9, 1908), the court considered this classification of negligence, observed that the early decisions had yielded assent to the academic classification, and further observed that comparative negligence had not been endorsed in this state, and stated that the classification of negligence into degrees was complicated and in fact had been dropped as useless, and that (p. 41) *"the doctrine may as well be taken out of the law governing personal-injury cases here and now";* and further said:

"The question always is, Has the care, diligence or skill demanded by the peculiar circumstances of the particular case been exercised? If so, there is no negligence. If not, there is negligence." (p. 41.)

The syllabus reads:

"1. The doctrine of comparative negligence is not recognized in this state.

"2. The classification of negligence into three degrees is no longer recognized in this state."

Since that decision the general rule has been that what constitutes negligence is the lack of due care of a party, whether plaintiff or defendant, in the particular circumstances disclosed by the record, and it has been the rule that one whose negligence contributed to his injury or damage cannot recover from another no matter how great was his negligence. The question of comparative negligence,

or of the negligence of one as compared to that of the other, has not been recognized. This has brought into prominence the question of contributory negligence. Defending counsel have been alert to present it when indicated in any way, and the court has been compelled to pass upon it, and apparently with a growing tendency to sustain a claim of contributory negligence whenever possible; so much so that in *Johnson v. Union Pacific Rld. Co.*, 157 Kan. 633, 143 P. 2d 630, the court held plaintiff could not recover on account of the contributory negligence of the decedent for whose death the action was brought, and ignored cases cited by plaintiff's counsel and discussed by defendant's counsel upon a point which probably would have defeated the court's holding. Now in this case the court goes further and construes the allegations of plaintiff's petition against him, which should be construed in his favor under the well-settled rule that when a demurrer is being considered to a petition not attacked by motion, it should be construed favorably to plaintiff.

I am somewhat startled that a court of last resort, upon a question which cannot be appealed, can use its power in deciding cases to change substantial rights of litigants by a wave of the hand, as in the Walters case, *supra*, or by ignoring unanimous decisions of this court with respect to what matters may be considered in determining negligence as in the Johnson case, *supra*, or by declining to follow the well-known and well-stated rule that a petition not attacked by motion should be construed more favorably to plaintiff, as in this case.

The people in a few states have attempted to guard against such holdings by a provision in their constitution. Quite a few others have attempted the same thing by adopting the comparative negligence doctrine by statute. The federal government has done substantially the same thing in its Federal Employees Liability Act and in some other statutes. In this state, and I think in all of the other states and in the federal government, the question of negligent liability of either plaintiff or defendant has been abrogated in certain industries by workmen's compensation acts which provide measures of liability for personal injury. With respect to highway crossing accidents at least one of the states has attempted to meet the question by eliminating unnecessary grade crossings and by constructing underpasses or overpasses at the principal highway crossings. It is true that none of those measures applicable to the controversy here has been adopted in this state. That is all the

more reason why this court should not use its ultimate power to prevent a litigant from having the facts of his case tried in a court created for the trial of facts.

Time will not permit the analysis of the many cases cited in the opinion. We observe that in the case of *Richards v. Chicago, R. I. & P. Rly. Co.*, 157 Kan. 378, 139 P. 2d 427, from which a quotation is made in the opinion, that the legal question upon which the decision turned was one of proximate cause as distinct from contributory negligence of the one for whose death an action was brought.

It may be observed that the phrase, "A railroad track is a sign of danger," has been repeated so frequently as to become a slogan, perhaps properly so; but this does not mean that a railroad track is a sign that a train is approaching so near that it would be dangerous for one to cross. Perhaps no more than a small fraction of a 24-hour period is consumed by a train in such a position. The track is a sign that one approaching it with the intention of crossing it should use due care to avoid danger to himself and any other occupants of his vehicle, as well as danger to the vehicle. What is due care in any particular case depends upon the circumstances disclosed by the pleadings and shown by the evidence. The petition discloses that this crossing was a more dangerous one than a crossing of one track at right angles with nothing to obscure the view. Here were three tracks, two for through trains, with boxcars on a sidetrack which obscured the view of an approaching train for more than a quarter of a mile on one side of the crossing, and on the other side for a distance apparently longer. The space between the sidetrack and the main tracks was not sufficient to enable the driver to cross the sidetrack and stop and look for a train upon the main tracks before attempting to cross them. This situation naturally imposed a greater duty upon plaintiff's driver to exercise due care. He was not, however, required to anticipate negligence of defendant in not having the whistle blown on its engine the distance away from the crossing the statute requires such a whistle to be blown. It was alleged in the petition that was not done, and by its answer defendant concedes that for the purpose of the demurrer. From this petition there was no reason to assume that plaintiff's driver was unfamiliar with his duties under the circumstances or that he neglected to perform them. His own personal safety and that of his small son who was with him, and

the safety of his employer's semitrailer truck and its load, if it was loaded, would naturally prompt him to vigilance. The evidence might justify a jury in finding that the speed of the train was such that the warning of the whistle, if given 80 rods away, would have been insufficient to have enabled him to cross the track in safety. In such a situation it would have been the duty of the defendant to have had some additional warning of an approaching train. Statutory signals of an approaching train are the minimum which should be given. It is well settled in the law that if they are inadequate others should be given. Perhaps due care on the part of the defendant required it to have some type of a wigwag, bell or gong at the crossing to indicate an approaching train. It is true plaintiff did not allege the absence of such a device, but the decisions indicate that without such an allegation the fact might have been shown in the evidence as one of the circumstances existing at the time and place of the accident. But that point need not be decided here. It is mentioned simply as indicating the necessity of a trial in cases such as this so as to determine all the pertinent facts bearing on the negligence of defendant, or the contributory negligence of plaintiff.

Railroads constitute an important industry in this state, are beneficial to our people and necessary for them in the conduct of their business and should not be harassed by unfounded litigation. We have also in this state much business transacted by motor-driven vehicles on highways, and the state, aided in certain particulars by the federal government, has expended large sums to construct and maintain highways which are used largely by motor vehicles. These highways necessarily cross railroad tracks. Our citizens who use the highways are entitled to have such crossings constructed and maintained in such a way that it is reasonably possible for them to be used with safety. When a collision between a motor vehicle and a train occurs at a crossing each party is entitled to a fair hearing upon the question of liability therefor.

Contributory negligence is a defense which plaintiff is not required to negative by his petition. Certainly he is not required to anticipate every possible item of conduct which might tend to show him negligent in some particular and negative each of them in his petition. If the allegations of plaintiff's petition were construed favorably to him instead of against him I see no reason to

say that the petition does not state a cause of action. The judgment of the trial court should be reversed.

SMITH, J., concurs in the foregoing dissenting opinion.

PARKER, J., dissents.