Vera Freone **HOLLINGER**, Administratrix of the Estate of Vera McCLAY, Deceased, Plaintiff-Respondent,

v.

**MISSOURI PACIFIC RAILROAD COMPANY**, a Corporation, Defendant-Appellant.

No. 47632.

Supreme Court of Missouri,

Division No. 1.

April 11, 1960.

Motion for Rehearing or to Transfer to Court en Banc Denied May 9, 1960.

Richard H. Beeson, David P. Dabbs, Dean F. Arnold, Paul E. Vardeman, Jr., Kansas City, for appellant.

Glenn E. McCann, Knipmeyer, Milligan, McCann & Millett, Kansas City, for respondent.

WESTHUES, Judge.

This is an action filed by plaintiff as administratrix of the estate of Vera McClay, deceased, against the defendant Missouri Pacific Railroad Company to recover damages for the wrongful death of Vera McClay. The deceased met her death at a crossing near Ottawa, Kansas, on August 9, 1956. The suit was filed in Jackson County, Missouri. A trial resulted in a verdict for plaintiff in the sum of $18,000. After a motion for new trial was overruled, the defendant appealed from the judgment.

On the morning of August 9, 1956, at about 6:15 o'clock, Dewey McClay and his wife Vera drove from their home located about three quarters of a mile east of a crossing of Seventh Street and defendant's railroad tracks. As their car passed over the tracks, defendant's passenger train, called the Colorado Eagle, struck the car resulting in Vera's death.

The evidence supports the following statement of facts: Seventh Street, from the home of the McClays to a point west of the crossing, is a county road about 20 feet in width, of gravel surface, and practically level. Seventh Street runs due east and west. The defendant's tracks, consisting of a main line track and a side track, run in a northwesterly and southeasterly direction. The side track is to the east of the main line track and the space between the inner

rails is about 9 feet. On the morning in question, a local freight train of about 40 cars was on the side track to permit a passenger train, the Colorado Eagle, to pass on the main line. The Eagle passed the freight train when the freight train was about 100 or 130 feet north of the crossing and either standing still or moving at about 2 to 3 miles per hour. Both trains were going south. The Ottawa station was about a mile and a half to the north of the crossing.

The McClays owned and operated a small farm of about 80 acres. Mr. McClay was working in Sunflower, Kansas, and Mrs. McClay did much of the work at the farm. The McClays drove to Ottawa daily where Mr. McClay "picked up" a ride to the Sunflower plant. Mrs. McClay would drive back to the farm with the car in the morning and return to Ottawa in the evening to get her husband. So, the McClays crossed the railroad tracks at Seventh Street daily. At the time of the collision it was daylight. It had rained the night before and it was still cloudy with a little rain now and then. The tracks were slightly higher than Seventh Street and there were no obstructions so that the tracks could be plainly seen from the Seventh Street roadway.

On the morning in question, Mr. McClay was driving the car and his wife, the deceased, was sitting next to him on the front seat. This placed her on the north side from which she could see to the north toward the tracks. What occurred immediately before and at the time of the collision was related by Mr. McClay as follows: that he saw the freight train standing on the side track about 100 or 130 feet north of the crossing when the McClay car was about 100 yards from the crossing; that he slowed down to about 2 or 3 miles per hour when he was 30 feet from the tracks and "The freight train whistled just a short blast. They have done that lots of times. The men was standing there. I thought that was all of it and I drove on across. I looked south, didn't see anything,

accelerated my speed and went on across, started across and—

"Q. Now, Dewey, let me go back just a moment. Your speed was about two or three miles an hour when you were down where the water was, is that right? A. That is right.

"Q. And which way did you look at that point, to the north or to the south? A. As I came up I noticed the men standing there. I looked down to see if another train was coming. I drove on out and the train that hit me was coming from the north.

"Q. Did you ever see the train before it hit you? A. I did not.

\*    \*    \*    \*    \*    \*

"Q. After you heard the whistle and saw the freight train stopped, what did you do? Did you look any other direction? A. I looked down the track south. I put down on the gas and I went on across the track.

"Q. You were going two miles an hour and you put down on the gas. How fast were you going when you reached the main track, if you have any judgment, approximately? A. I would judge around 20 miles an hour.

"Q. So you first looked to the north? A. That is right.

"Q. During that time were you accelerating the speed of your car? A. That is right.

\*    \*    \*    \*    \*    \*

"Q. During the time you looked to the north and south as I understand your testimony, you were accelerating the speed of your car from two or three miles to 20, is that correct? A. That is right, yes.

"Q. Dis Mrs. McClay say anything to you before this accident happened? A. Just at the time I started on the main track she said, 'There's a train.'

"Q. What did you do? A. I just went in a whirl, that is all. I didn't see nothing or didn't hear no more.

"Q. Which direction were you looking at that time? A. Well, I was looking down the road ahead.

"Q. Had you looked to the south previously to that? A. I had.

"Q. And you had looked to the north? A. I had.

"Q. Had you cleared the passing track? A. I had."

Mr. McClay testified that he never saw the train that struck his car. It was admitted that the passenger train was traveling at 50 miles per hour when it passed over the crossing.

On cross-examination, Mr. McClay testified as follows:

"Q. You say after you looked to the south then you looked to the west, the direction you were traveling? A. I turned and come on the track and went on. I looked ahead.

"Q. That is toward the west, the direction you were traveling? A. Yes, coming from the south.

"Q. Now, you never did, as I understand it, look up to the north up the main line? A. Not after I started to cross the track.

"Q. Not after you heard the whistling? A. Not after the whistling as I was coming on the passing track.

"Q. You never looked north up the main line after you heard the whistling? A. No, I didn't.

"Q. You never did see the Eagle that morning? A. I never saw the Eagle, no."

Prior to the above testimony, Mr. McClay had testified to the following on cross-examination:

"Q. Now at the time that you first saw this freight train, did your wife say anything to you at that time about the freight train? A. No.

"Q. At the time you slowed down to two or three miles an hour did your wife say anything about the freight train? A. No.

"Q. At the time you got up to about 10 miles per hour, did your wife say anything about the freight train? A. Well, at the time I started on the other track, or was there.

"Q. That is over on the main line? A. On the main line.

"Q. Well, did she say anything to you when you heard this whistling? A. The freight train, no.

"Q. She didn't say anything to you when you heard it whistle? A. No.

"Q. The first time, as I understand it, she did say anything was when you were goin onto the main line track? A. I suppose. I was on the main line.

"Q. You were already on the main line at that time? A. I suppose I was."

George A. Ledom, city engineer of Ottawa, Kansas, was called as a witness for plaintiff. This witness had drawn a plat to scale showing the crossing in detail. He used scale models of engines and placed them on the plat at various points to demonstrate the distance the Eagle could be seen at various points to the east on Seventh Street from the main line track. His evidence was that from a point 40 feet east of the main line tracks a passenger train could be seen 190 feet north of the crossing with the freight train standing 130 feet north of the crossing. Before the front of the Mc-Clay car reached the east rail of the side track, which was at least 12 feet from the east rail of the main line track, with the freight train 100 to 130 feet north of the crossing on the side track, the passenger

train was in full view of the McClays. The evidence was that Mrs. McClay did not warn her husband of the oncoming train until the car was on the main line tracks and that Mr. McClay never saw the train at any time. The above narration of the facts was taken in its entirety from the evidence introduced by plaintiff.

The defendant's evidence was that the warning signals for the crossing were given by the engineer of the Eagle; further, that a number of short blasts of the whistle of the freight train were sounded as the McClays approached the tracks. We shall disregard this evidence of the defendant and determine whether, as defendant contends, the McClays were guilty of negligence as a matter of law.

All parties agree that this case must be determined under the law of Kansas. If under the evidence Mr. and Mrs. McClay were guilty of negligence as a matter of law, the judgment in plaintiff's favor must be reversed. We are of the opinion that such is the case. The McClays, driving westerly on Seventh Street, were approaching a crossing of the defendant's tracks which ran in a northwesterly and southeasterly direction. The tracks to the northwest were therefore in plain view. A train going south toward the crossing could be discovered by one traveling west by a slight turn of the head and eyes toward the north. Plaintiff's evidence was that visibility was good. Mr. McClay, sitting on the driver's side (south side) of the car, saw the freight train for the first time when he was 100 yards east of the crossing. When he reached a point about 30 feet from the crossing and had slowed down to 3 or 4 miles per hour, he heard a whistle. He then looked to the south, then west, and did not again look to the north. Before he reached a point 20 feet from the main line tracks, the passenger train approaching the crossing was in plain view of both Mr. and Mrs. McClay. The McClays knew there were two tracks at that crossing which they drove over daily. Mr. McClay

testified that he had seen freight trains on the side track on many occasions.

We shall now refer to a number of cases decided by the Supreme Court of Kansas wherein the facts were much the same as those in the case before us and, in each case, the court held the injured party to be guilty of negligence. In the case of Horton v. Atchison, T. & S. F. Ry. Co., 161 Kan. 403, 168 P.2d 928, plaintiff, the driver of a motor vehicle, was held to have been guilty of contributory negligence in failing to look for a train from a point where the oncoming train could have been seen. In that case, as in this, boxcars were on a side track from a point 90 feet from the crossing. The court said, 168 P.2d loc. cit. 933 (7, 8): "It is common knowledge that the hazard to appellant's driver was increased by the boxcars and by the fact the track ran through the intersection at an angle. These facts required vigilance proportionate to the hazard. The fact the driver might have been obliged to turn in his seat and look backward in order to maintain the necessary lookout for an approaching train did not relieve him of the duty to exercise such diligence. Reader v. Atchison, T. & S. F. Railway Co., supra, 112 Kan. at page 404, 210 P. 1112.

"In Chicago, R. I. & P. Railway Co. v. Wheeler, supra, it was said: 'It is not enough for a traveler to look where an approaching train can not be seen, or to listen where it can not be heard. Nor will it suffice that one has looked some distance away from the crossing when a view on a closer approach would have revealed the danger. (Atchison, T. & S. F.) Railroad Co. v. Holland, 60 Kan. 209, 56 P. 6; (Union Pacific) Railroad Co. v. Entsminger, 76 Kan. 746, 92 P. 1095.' 80 Kan. at page 191, 101 P. at page 1003."

In Ross v. Fleming, 165 Kan. 279, 194 P.2d 491, plaintiff sued for the death of her husband. The husband was the driver of the car. Plaintiff was a passenger. A quotation from the opinion will disclose that the facts in that case were somewhat

similar to those in the present case and that the law there stated is applicable to this case as to the negligence of Mrs. Mc-Clay. Note what was said, 194 P.2d loc. cit. 495(1–4): "The evidence above recited need not be repeated in full. The heart of it, on the question of contributory negligence is that the driver of the truck stopped between ten and fifteen feet west of the west track to permit the northbound freight train on the east track to clear the crossing; the view to the north was then unobstructed for 1,500 feet; after the freight train cleared the crossing the driver started the truck and thereafter the plaintiff did not look to the north until they were on the track. She did not know whether her husband looked or not, but he gave no indication of having seen the passenger train until it was 'right on top' of them. That was the same time when she saw it and the train was then, in her opinion, not farther than 75 or 80 feet away. This court has said many times that a railroad crossing is, in itself, a warning of danger and that the duty to use care in crossing railroad tracks is a continuing one. (Horton v. Atchison, T. & S. F. Ry. Co., 161 Kan. 403, and cases cited page 407, 168 P.2d 928; 44 Am.Jur. 806.) Although the plaintiff was not driving the truck, it was her duty to use due care for her own safety. This she did not do. After the truck started up to cross the track she did not look to the north, nor give any warning to the driver."

Plaintiff cites the case of Kendrick v. Atchison, Topeka & Santa Fe Railroad Co., 182 Kan. 249, 320 P.2d 1061. In that case, the driver of a car in which plaintiff was riding in a car pool arrangement was killed in the collision at a railroad crossing. Plaintiff, a passenger in the car, was injured and he sued the railroad and the estate of the driver, Charles Manley. At the close of the evidence, the trial court sustained a demurrer to the evidence in favor of the railroad. Plaintiff based his claim against the railroad on the theory that the failure to sound a warning for the crossing was a contributing cause of the collision. There was evidence that no warning had been given by the operator of the train. However, in that case, the passengers in the car warned the driver but the driver seemed not to realize what the warning was for as is noted in a portion of the evidence quoted in the opinion, 320 P.2d loc. cit. 1066: "'Mr. Manley increased the speed of his car. I warned him that there was a train on the track up ahead. I yelled out. Mr. Manley turned around and wanted to know what we were wanting to stop for, what we had hollered out about. I warned him again. Mr. Manley turned around and then after a few seconds, hit the brakes. During this time, all three of us kept warning him. There was a squeal of brakes, and we almost got stopped, and then hit the train.'" The Kansas Supreme Court held it was a question for a jury to determine whether the failure to give a warning by the railroad crew was a contributing or a proximate cause of the collision.

In the case before us, the plaintiff introduced evidence that Mrs. McClay gave her husband no warning until about the time of the impact.

In the brief, plaintiff contends that the crossing in question was unusually hazardous. It is said, "Although respondent is unable to find any Kansas cases directly in point, there are many Missouri cases which hold that whether a crossing is unusually dangerous or hazardous, is a question for the jury." The crossing in question was no more hazardous than those involved in the cases of Horton v. Atchison, T. & S. F. Ry. Co., and Ross v. Fleming, supra. In the Horton case, the Kansas Supreme Court held that where the hazard is greater than the usual, greater vigilance is required by the traveler. See also 75 C.J.S. Railroads § 773b, p. 30, and 75 C.J.S. Railroads § 777, pp. 46–48.

It is our opinion that Mr. and Mrs. Mc-Clay were each guilty of negligence as a

matter of law and that therefore other points briefed need not be considered.

The judgment is reversed.

All concur.