No. 35,148

B. C. CULP, *Appellee*, v. H. C. NEW, THE MISSOURI PACIFIC RAILROAD COMPANY and GUY A. THOMPSON, as Sole Trustee, etc., *Appellants*.

(114 P. 2d 819)

Opinion filed July 5, 1941.

*R. L. Hamilton*, of Beloit, *W. P. Waggener, O. P. May, B. P. Waggener* and *Ralph M. Hope*, all of Atchison, for the appellants.

*Ralph H. Noah*, of Beloit, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action for damages alleged to have been sustained when an automobile being driven by plaintiff collided with a locomotive operated by defendant New for defendant railroad company. Two trials of the action each resulted in the jury being

unable to agree. At the conclusion of the evidence of plaintiff at the last trial the defendant demurred to it on the ground that it did not prove facts sufficient to constitute a cause of action. This demurrer was overruled. Defendant also filed a motion for judgment and this was overruled. The defendant has appealed from both those rulings.

The collision occurred at the point where the roundhouse track of the defendant railroad company crosses Main street in the city of Horace. The plaintiff had backed his car onto this track preparatory to driving it away from the depot. He alleged that the locomotive ran into his car and that the collision was caused by the negligence of the defendant in that defendant New did not keep a proper lookout; that he reversed the engine across the street without any person being in a position to observe the tracks; that he started the engine backward without giving a warning signal; that he did not stop the engine before hitting the plaintiff's automobile; that neither of the defendants maintained a proper signal to warn users of the highway of the approach of engines upon the tracks, and that they operated the engine when no signals or warning signs, bells or other devices were in operation.

The defendants answered with a general denial, and alleged that the plaintiff's injuries were the result of his own negligence in failing to stop, look and listen before driving upon the track and in failing to exercise proper caution for his own safety.

A map drawn to scale was introduced in evidence.

The main track of the defendant at this place runs east and west. Main street of the city of Horace crosses the tracks there at right angles. The depot of defendant is located north of the main track. To the south of the main track are seven sidetracks. North of the depot is a track known as the roundhouse lead track. It runs a little northwest from a point several hundred feet east of Main street, where it branches off from the main track to a point a considerable distance west of the depot, where it enters the roundhouse. Main street crosses the main track at a point about a hundred feet east of the depot and crosses the roundhouse track directly north of the main track crossing. Along the west line of Main street it is thirty-eight feet from the north rail of the main track to the south rail of the roundhouse track. About forty-five feet east of the southeast corner of the depot is a light pole. It is about twenty-five feet south of the roundhouse track. Between the light pole and the depot are six guard posts directly in line with each other and with the light

pole and the southeast corner of the depot. Directly north and a little east of the depot there is a cinder crossing over the roundhouse track twenty-five feet in width. Main street is about forty-five feet wide and it is about forty feet from the light pole to the west side of Main street. All of the ground around the depot between the two tracks that have been spoken of and to the north of the roundhouse track is fairly level and covered with cinders.

On the morning of the injury plaintiff had a business transaction with the railroad company with reference to the shipment of some sheep. He, with some companions, drove his car to the depot and stopped it headed west by the side of the light pole that has been spoken of. There was another car between it and the light pole. There was a passenger engine of the defendant standing on the roundhouse track. Plaintiff alleged that the rear of this engine was east of Main street and off the traveled portion of the street by approximately ten feet.

At the trial one of plaintiff's witnesses testified that the engine was fifteen or twenty feet east of the east line of the street. Another one of the plaintiff's witnesses testified that it was east of the crossing. Plaintiff testified that the rear end of the engine was several feet from the east side of Main street. The son of plaintiff testified that the rear end of it was east of the street crossing. Defendant New testified that while the engine was standing still just before the collision the rear end of the engine extended approximately five feet over the crossing.

When plaintiff returned from transacting his business in the depot he and one companion entered his car with the intention of driving south across the main track and south on Main street. It will be remembered that his car was parked by the light pole headed west and the Main street crossing of both the roundhouse track and the main track were east and to the rear of him.

The story is best told from now on in the language of the plaintiff himself. He said:

"We backed east . . . backing across the crossing. . . . I would judge I backed about the middle of the street. . . . I was looking to see if this engine was still standing still and . . . it was."

Note the following language—

"Q. Before going onto the track, when did you last look to the east towards that engine, about how far was you from the track, would you say? A. Oh, I was very near on the track.

"Q. When did you first see that engine in motion? A. Well, as I started forward and looked up, why the engine was just a few feet from the car, coming.

"Q. About how many feet, would you estimate? A. I would judge five or six feet, probably.

"Q. Something like that. You didn't measure it? A. No.

"Q. And how long after you saw it was it before that engine hit your car? A. Immediately."

On cross-examination he testified as follows:

"I saw this engine standing there when we got in the car and as we started to back.

"Q. And then when next did you look back at this engine or the crossing? A. As I backed my car across the crossing, I noticed the engine standing there.

"Q. I see. That was the next time that you noticed the engine standing there. First you noticed it just as you got in the car, and then you noticed it when you crossed the crossing? A. Yes."

Later on, on redirect examination, he testified as follows:

"Q. Now, several questions have been asked about your backing up. As you backed your automobile toward the east, toward the main street at Horace, which way were you looking? A. Well, I was looking out the left side of the car towards the east to the street I was backing on.

"Q. And as you backed toward the street, which way did you look in reference to the rear? A. I looked to the north.

"Q. And did you see the engine, was the engine in your view at all times until you turned directly to the north? A. Yes.

. . . . . . . . . . . . . . . . . . . .

"Q. When you was—as you was backing on the crossing, about how far from the crossing was you, when you last saw the engine? A. Fifteen or 20 feet, something like that.

"Q. You didn't measure it? A. No.

"Q. You wouldn't say that that was right within several feet, would you? A. No.

"Q. One way or the other."

As will be noted from the statement of distances heretofore set out in this opinion, it was about forty feet from the place where plaintiff entered his car and started to back it toward the east to the west line of Main street. Main street is about forty feet wide, so since he said he backed to the middle of the street he must have backed about sixty feet. When he reached this place approximately in the middle of the street he cramped his wheels and began to back north so as to head his car south to continue on down Main street, as he intended.

The only conclusion that can be drawn from his own testimony is that he last looked toward the engine when he was fifteen or twenty

feet from the track. The record is silent as to how long it took him to shift gears when he got on the track. He did not say that it took any unusual amount of time so the inference is that his stopping and shifting gears was a matter of a fraction of a second. The railroad track was a signal of danger in itself, especially so when there was an engine standing on the tracks, either in the street, as the defendant's witnesses testified, or a few feet from the street, as the plaintiff's witnesses testified. According to plaintiff's own evidence, giving it the most favorable construction and drawing all inferences favorable to him that may be drawn from it, he backed toward the railroad track for fifteen or twenty feet at the rate of four or five miles an hour without looking toward this engine just before he drove upon the track. At all times within that fifteen or twenty feet he was in a position of safety.

It was his duty under the circumstances to look toward the engine at the very fraction of a second before he entered upon the track where it was possible for the engine to hit him. (See *Reader v. Railway Co.*, 112 Kan. 402, 210 Pac. 1112.) He says that the engine was only a few feet away when he saw it bearing down upon him— hence, from the time when he was just barely off the track until he backed onto it the engine, according to all of the witnesses, would have to move several feet. He could have prevented the collision by stopping and waiting until the engine backed past the crossing or by continuing to back north across the track up Main street until the front of his car cleared the track. This he failed to do and his failure so to do was negligence which contributed to his injury.

The judgment of the trial court is reversed with directions to enter judgment for the defendant.