## No. 37,073

BEULAH MARIE ROSS, a widow, *Appellant*, v. JOSEPH B. FLEMING and AARON COLNON, Trustees of the Estate of the Chicago, Rock Island and Pacific Railway Company, *Appellees*.

(194 P. 2d 491)

Opinion filed June 12, 1948.

*David Prager,* of Topeka, argued the cause, and *John J. Riling,* of Lawrence, *Edward Rooney* and *Jacob A. Dickinson,* both of Topeka, were with him on the brief for the appellant.

*Clayton M. Davis,* of Topeka, argued the cause, and *J. E. DuMars,* of Topeka, was with him on the brief for the appellees.

The opinion of the court was delivered by

HOCH, J.: This was an action to recover damages for the wrongful death of the plaintiff's husband, resulting from a collision at a railroad crossing. The appeal is from an order sustaining defendant's demurrer to the plaintiff's evidence. Appellant's sole contention is that the trial court erred in not submitting to the jury the question whether the defendants were guilty of actionable negligence, under the doctrine of last clear chance.

The accident occurred on February 19, 1945, at a Rock Island railroad crossing about two miles north of Lawrence. There were two parallel tracks running north and south. The plaintiff and her husband, Robert Orvall Ross, were riding in a truck driven by the husband, and were proceeding eastward on a graveled county road, and were almost across the west tracks when a passenger train coming from the north struck the truck, killing the husband.

In her petition the plaintiff alleged that the defendants were negligent in that the engine crew failed to give the whistle signal as required by law; that they failed to keep a lookout and to see the truck which was visible for a distance of 1,500 feet from the crossing, and that "defendant's servants, agents and employees neither stopped or attempted to stop or reduce their speed, but carelessly and negligently continued at the same rate of speed towards the truck driven by the deceased in its position and situation of danger, and knew, or by the exercise of ordinary care should have known that had they either stopped or reduced their speed, they would prevent or avert a collision."

A motion to make definite and certain having been sustained, the petition was amended to allege that the truck stopped about

ten feet from the west track in order to permit the passing of a freight train which was coming from the south on the east track; that the truck proceeded from a standstill at the start and was traveling at a speed of three miles an hour or less when it "hesitated and would not function properly and also stalled, for what reason plaintiff is not informed"; that the truck hesitated on the track as the rear wheels came upon the first or west rail of the west track; that at the time the passenger train emerged from the smoke of the freight train about 1,500 feet from the crossing the front of the truck was upon the west track upon which the train was approaching.

In its answer the defendant alleged that the accident resulted solely from the failure of the driver to look and see the approaching train before proceeding upon the crossing and the negligence of the plaintiff in failing to look and listen for approaching trains and to warn her husband of the danger.

Pertinent parts of plaintiff's evidence may be summarized as follows: On the day of the accident it was misty and foggy, and had been raining. The road upon which the truck was traveling was graveled, was not muddy, and was in good condition. There was "a little grade" at the crossing. The deceased, driver of the truck, was familiar with the road and had been over it with the truck, loaded, once before that day. The truck was a "ton and a half" and was loaded with 160 bushels of corn. It was in good mechanical condition. It had hydraulic brakes which were in perfect condition, and the motor was operating perfectly. The truck had a five-speed transmission, two low speeds, a second, a high, and a reverse. In addition to the ordinary low speed, it had a "compound low" which ran the gear ratio down, giving additional power but not much speed. The maximum speed in compound low gear was three miles per hour. When the speed got down to three miles per hour in low gear, it was necessary to switch to compound low if there was a hard pull, and at the instant of making the shift, the truck would lose a little speed. Going at three miles per hour in compound low, the truck could be stopped almost instantly in a foot or two on the level. The truck had a 161-inch wheel base and the bed extended about five feet back of the back wheels.

At the crossing where the accident occurred the railroad double tracks run north and south. The tracks were straight on each side of the crossing north and south for a distance of about three-fourths

of a mile each way. About 150 feet east of the tracks is highway 24 running parallel to the tracks.

Plaintiff testified that she was seated at the right of her husband and that they approached the crossing from the west at about 3:15 in the afternoon. When they got to the crossing they saw a freight train approaching from the south on the east track. They stopped between ten and fifteen feet from the west track in order to permit the freight train to go past the crossing. They could have gotten across but decided that since they had a heavy load of corn they wouldn't cross because it would have been hard to make it. After the freight train passed the crossing they started up to go across the tracks. She and her husband had looked up and down the tracks in both directions and while their view to the north was obstructed by what looked like fog, she could see to a distance of 1,500 feet from the crossing. Asked whether she had looked to the north at any time after the truck started to move from a standing position she answered: "Well, not until the whistle, and it was right there. I don't believe it had whistled before and I had looked just as it started to whistle, and it was right on top of us then." Other questions and answers were as follows:

"Q. Then the distance that the truck moved from where it was standing until it got on the track, had you looked to the north any more? A. No.

"Q. You didn't look any more from the time the truck started up? A. Not until we were on the track.

"Q. Do you know whether or not Mr. Ross looked? A. No, I don't know.

"Q. You don't know. Now you think the engine was 75 or 80 feet away when you first saw it? A. Yes. I don't think it was any farther than that."

She testified further that when her husband started up he put the truck into compound low and as they got on the crossing he had gotten up sufficient speed to change to regular low, but that as the first wheel or first part of the cab had gotten across the first rail, he had to change back into compound low; that as he changed into compound low the truck came almost to a stop but not to a complete stop. At that time the speed of the truck was about three miles or perhaps not quite that fast; that the truck moved forward when her husband shifted back to compound low; that the rear wheels of the truck were between the rails when the train hit. Her husband gave no indication of having seen the passenger train after the truck started up, until the train was about to hit them, and that was the same time she saw it. At that time the cab of the truck

moved from a position in which the cab was over the tracks to where the rear wheels were over the tracks.

Witness Henderson was driving his car on highway 24 on the afternoon of the accident and was coming from the north toward the east and west road upon which the truck was traveling. He knew there was a passenger train going south because he saw the smoke coming up over the boxcars of the freight train which was going north. He particularly noticed the smoke from the passenger train when he was "right at 1,000 feet" from the crossing. He continued to watch the passenger train as it continued south. He was traveling about 40 miles an hour and the passenger train went on past him and did not slacken its speed. He did not hear the passenger train blow its whistle until the impact with the truck. When the freight train had cleared the crossing "maybe 75 or 100 feet, that far anyway" he saw the truck on the west side of the track. The passenger car that was stopped on the east side of the tracks started up and stopped, and it looked to him as though it pulled up approximately on the tracks and then backed up. When he first saw the truck west of the tracks he was then "around 500 or 600 feet north of this road that went across the tracks," and he was "within 600 feet of the crossing when the train hit the truck." The passenger train was about 900 feet long.

Witness Laptad who lived on a farm near the scene of the accident testified that he and his father were working at a point about 200 yards from the crossing, and that a barn was between them and the crossing; that the freight train was making so much noise that they had to discontinue their conversation while it went on by the crossing and whistled; that after the freight train went on by the barn he heard an impact and another whistle, and that the whistle of the passenger train continued to blow for about a quarter of a mile after the train passed the crossing; that he did not hear any whistle of the passenger train before the collosion; that the passenger train came to a stop when the rear end was about 100 yards south of the crossing or possibly a little more.

The evidence clearly discloses that the plaintiff was guilty of contributory negligence. Indeed, she concedes that to be true when she predicates her right of recovery solely upon the doctrine of last clear chance. (*Jamison v. Atchison, T. & S. F. Rly. Co.*, 122 Kan. 305, 308, 252 Pac. 472, and cases there cited; *Goodman v. Kansas City, M. & S. Rld. Co.*, 137 Kan. 508, 511, 512, 21 P. 2d 322, and

cases therein cited.) The evidence above recited need not be repeated in full. The heart of it, on the question of contributory negligence, is that the driver of the truck stopped between ten and fifteen feet west of the west track to permit the northbound freight train on the east track to clear the crossing; the view to the north was then unobstructed for 1,500 feet; after the freight train cleared the crossing the driver started the truck and thereafter the plaintiff did not look to the north until they were on the track. She did not know whether her husband looked or not, but he gave no indication of having seen the passenger train until it was "right on top" of them. That was the same time when she saw it and the train was then, in her opinion, not farther than 75 or 80 feet away. This court has said many times that a railroad crossing is, in itself, a warning of danger and that the duty to use care in crossing railroad tracks is a continuing one. (*Horton v. Atchison, T. & S. F. Rly. Co.*, 161 Kan. 403, and cases cited p. 407, 168 P. 2d 928; 44 Am. Jur. 806.) Although the plaintiff was not driving the truck, it was her duty to use due care for her own safety. This she did not do. After the truck started up to cross the track she did not look to the north, nor give any warning to the driver.

Although guilty of contributory negligence, the plaintiff contends that the evidence presented a situation which required the question of defendants' liability to be submitted to the jury under the doctrine of last clear chance.

The doctrine of last clear chance, as it has been broadly stated and generally recognized, has been frequently approved and applied in this state and notably in cases involving collisions at railroad crossings. (As to applicability in railroad cases, see cases cited in 8 West's Kansas Digest, § 338, Railroads, and Hatcher's Kansas Digest, §§ 145, 146, Railroads.) The doctrine has been variously stated but with little difference in import. In 38 Am. Jur. 900-902 *et seq.*, § 215, it is said:

". . . stated broadly [the doctrine], is that the negligence of the plaintiff does not preclude a recovery for the negligence of the defendant where it appears that the defendant by exercising reasonable care and prudence might have avoided injurious consequences to the plaintiff notwithstanding the plaintiff's negligence. The practical import of the doctrine is that a negligent defendant is held liable to a negligent plaintiff, or even to a plaintiff who has been grossly negligent in placing himself in peril, if the defendant, aware of the plaintiff's peril, or, according to some but not all authorities, although unaware of the plaintiff's peril, reasonably in the exercise of due care should have been aware of it, had in fact a later opportunity than the plaintiff to avoid an

accident. As the doctrine usually is stated, a person who has the last clear chance or opportunity of avoiding an accident, notwithstanding the negligent acts of his opponent or the negligence of a third person which is imputed to his opponent, is considered in law solely responsible for the consequences of the accident . . ."

Discussing the rule as applied to railroad accidents, it is said in 44 Am. Jur. 726, § 487:

"The doctrine does not rest upon any breach of duty on the part of the railroad company before the peril arose, but imposes upon the railroad company, after the peril of the person on or near the tracks was or should have been, discovered, the duty of reasonable care under the circumstances, consistent with the duties owing to others, to avoid injury to the imperiled person regardless of whether such person was a trespasser or was negligent in the first instance in getting into danger, and if the company failed to exercise such care and the person was injured, it is liable."

In 45 C. J. 984, 987 et seq., § 539, it is stated:

"It is well established, in practically every jurisdiction, that there may be a recovery for injuries sustained, notwithstanding a plaintiff, or one for whose conduct plaintiff is responsible, negligently exposed himself or his property to the danger from which the injury complained of arose, if defendant failed to exercise ordinary care to avoid the injury after becoming aware that the person or property was in a position of peril. . . . A general statement of the doctrine, as expressed by some courts, is that the contributory negligence of the injured party will not defeat recovery if defendant, by the exercise of ordinary care, might have avoided the consequences of the injured person's negligence. This general statement, however, is subject to the qualification that there can be no recovery if negligence for which plaintiff is responsible concurs with the negligence of defendant as a proximate cause of the injury."

Also, for extended discussion of doctrine, see 92 A. L. R. 28 et seq., and Leinbach v. Pickwick-Greyhound Lines, 138 Kan. 50, 63 et seq., 23 P. 2d 449.

In Goodman v. Kansas City, M. & S. Rld. Co., supra, in which many of our preceding cases involving the doctrine were cited, the elements essential to applicability of the doctrine were succinctly stated as follows:

". . . (1) Plaintiff, by his negligence, placed himself in a position of danger; (2) that his negligence had ceased; (3) that defendant seeing plaintiff in a position of danger, or by the exercise of due care should have seen him in such position, by exercising due care on his part had a clear chance to avoid injuring plaintiff; (4) that defendant failed to exercise such due care; and (5) as a result of such failure plaintiff was injured." (p. 512.)

At the outset, it may be said that it is by no means clear that facts alleged in the petition were sufficient upon which to invoke

the doctrine. As heretofore noted, it was alleged that defendants' employees did not stop or attempt to stop or reduce the speed of the train, but continued toward the truck "in its position and situation of danger," and knew or should have known that they could prevent or avert a collision either by stopping the train or reducing its speed. There was no specific allegation to indicate whether the "position and situation of danger" referred to was after the truck got upon the tracks, or existed when it was standing ten to fifteen feet west of the tracks when the engineer first saw it or should have seen it. Nor was there any allegation as to the distance the train was from the crossing when the truck was first seen to be in its position of danger. However, assuming the sufficiency of the allegations, we have examined the evidence, giving the plaintiff the benefit of every reasonable inference to be drawn therefrom, and find it wholly insufficient to justify submission of the case to the jury, under the doctrine of last clear chance.

In a railroad crossing case as in other actions for negligence, a plaintiff who invokes the last clear chance doctrine has the burden of bringing the case within the doctrine. (52 C. J. 408, and cases there cited.)

Other principles of law pertinent to the issue must also be kept in mind. The doctrine of last clear chance is not applicable so long as the plaintiff's contributory negligence continues. Otherwise stated, there can be no recovery under the doctrine where the negligence of the parties has remained concurrent. (52 C. J. 364; *Buchhein v. Atchison, T. & S. F. Rly. Co.*, 147 Kan. 192, 194, 75 P. 2d 280; *Bazzell v. Atchison, T. & S. F. Rly. Co.*, 133 Kan. 483, and cases cited p. 487, 300 Pac. 1108.) The reason for this rule is readily apparent when the question is considered from the standpoint of proximate cause. Approaching the doctrine from that point of view as many, but not all, courts do (38 Am. Jur. 902), where a plaintiff's negligence has ceased, it is regarded as remote and the defendant's negligence which *thereafter* follows is regarded as the proximate cause of the accident. It is thus clear that if the plaintiff's negligence has continued until the time of the accident and, without such negligence, the accident would not have occurred, recovery cannot be had. It may be that in jurisdictions where the doctrine of comparative negligence is recognized, recovery may, under certain circumstances, be had under the doctrine of last clear chance even though the plaintiff's negligence had not ceased. (38

Am. Jur. 903.)   But whatever may be said for or against the doctrine of comparative negligence, it has not been approved in this state.   (*Sayeg v. Kansas Gas & Electric Co.*, 156 Kan. 65, 67, 131 P. 2d 648; *Railway Co. v. Walters*, 78 Kan. 39, and cases cited p. 40, 96 Pac. 346.)

Another pertinent rule, well established, is that there is a presumption that persons approaching a railroad track will use due care before proceeding to cross, and a presumption of this nature is especially strong in a case such as the instant one, where a vehicle has come to a stop near the track.   In such a case the engineer has reason to assume that the driver of the vehicle has taken note of the approaching train and will remain in a place of safety.   (44 Am. Jur. 707, 727, 749; 52 C. J. 253 *et seq.*)   In 44 Am. Jur. 727, § 487, it is said:

"The mere fact that the engineer sees a person on or dangerously near a railway track in front of his moving train does not require him to endeavor to stop the train, for he has a right to assume, in the absence of anything to indicate otherwise, that such person will get out of his dangerous position in time to avoid a collision and injury, and the doctrine of last clear chance is not called into operation."

Involved also in the situation is another general rule with reference to reciprocal rights of the railroad and travelers on the highway.   This rule is stated as follows in 44 Am. Jur. 734 and 735, § 495:

"But while the relative rights and obligations of a railroad company and travelers on the highway are reciprocal, it is the privilege of the railroad company that its trains shall have the right of way, and that all persons on the highway shall yield precedence to the trains.   From the character and momentum of a railroad train, and the requirements of public travel by means thereof, it cannot be expected that it shall stop and give precedence to an approaching traveler to make the crossing first; the traveler must yield the use of the railroad track to an approaching train, and the conduct of the train crew may be lawfully predicated upon the expectation that travelers will observe their duty in this regard."

Lastly, it is obvious that the doctrine may not be invoked where no substantial evidence has been adduced that time remained in which the accident could, with reasonable care, have been avoided after the plaintiff's peril, in which he has entrapped himself by his own negligence, has been discovered or should have been discovered by the defendant.   (*Johnson v. Railway Co.*, 110 Kan. 378, 204 Pac. 727; *Williams v. St. Louis-S. F. Rly. Co.*, 122 Kan. 256, 252 Pac. 470; *Rule v. Railway Co.*, 107 Kan. 479, 192 Pac. 729.)

Viewing the evidence in the light of these principles, we find essential elements of the doctrine lacking. There was no evidence that the truck was on the track, or just going upon the track, or that it was stalled upon the track when the engine of the passenger train reached a point 1,500 feet from the crossing, from which point the view was unobstructed. In fact, the evidence indicates that it must have been then standing still ten or fifteen feet from the track. Instead of being a warning that the driver was about to place himself in a position of peril, a truck standing still near the crossing would be an indication to the contrary. Certainly a situation so presented would not require the engineer to stop the train or, indeed, to reduce the speed. The only reasonable assumption would be that the truck would remain where it was standing in order to permit the train to go by. Both from the direct testimony of Henderson and by mathematical computation, it appears that the train was not more than 600 feet from the crossing when the truck started up from a standing position. The truck never did stop moving and there was no evidence that it did not respond to the shifting of the gears. It traveled a maximum distance of not more than thirty feet from a standing position until it was struck. There was no evidence that the brakes of the train were not applied. The evidence was that although the train, 900 feet long, was traveling from 60 to 70 miles per hour, it came to a stop with the last car only about 300 feet south of the crossing. The inescapable fact is that the occupants of the truck proceeded upon the track without looking; that the truck started up at a time when but a few seconds remained within which the approaching train would reach the crossing. We find no evidence from which it could be said that the plaintiff's negligence had ceased, or if it had ceased that there was then time in which the defendants could have avoided the accident.

It follows from what has been said that recovery by the plaintiff, otherwise barred by her own negligence, could not be had under the doctrine of last clear chance.

The demurrer to the evidence was properly sustained and the judgment is affirmed.

HARVEY, C. J., concurs in judgment of affirmance.

COWAN, J., not participating.