No. 19,548.

CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD CO. *v.*
FRANK C. WILLIAMS.
(367 P. [2d] 342)

Decided December 18, 1961.   Rehearing denied January 8, 1962.

Messrs. HODGES, SILVERSTEIN, HODGES & HARRINGTON, Mr. WILLIAM V. HODGES, JR., Mr. JOHN BROOKS, JR., for plaintiff in error.

Messrs. McLEAN & McLEAN, Mrs. PATRICIA WOTKYNS, for defendant in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THE parties appear here in reverse order of their appearance in the trial court and will be referred to as they there appeared.

This is a negligence action involving a collision between plaintiff's automobile and defendant's diesel switching engine at the intersection of a railroad crossing and Kansas State Highway 27 in Goodland, Kansas. From the conflicting state of the trial testimony, but so that we may correctly apply the applicable law thereto, we will attempt to reconstruct the sequence of events leading up to the collision.

Defendant's main line railroad track runs in an east-west direction through Goodland, Kansas, and intersects State Highway No. 27, which runs in a north-south direction at a right angle. At a point approximately forty feet east of the highway and on the south side of the main line there is a spur track controlled by a switch. The spur leaves the main line at an angle and then runs parallel to it in an easterly direction. This track is called a "tail track" and is used for the purpose of switching

cars to and from the main line. The crossing is what one might term open or clear in that the view thereof from the highway to both sides is relatively unobstructed.

On September 26, 1957, a bright, clear day, at approximately 4:25 p.m. the defendant's employees were preparing to back a diesel engine with railroad car coupled to it westerly off the "tail track" and onto the main line. The car was then to be pushed easterly to a repair track. The diesel was in a reversed position, i.e., backing with its rear nearest the highway. Defendant's switchman and engineer were directly concerned with the switching operation. Prior to the accident the switchman walked from the engine to the switch and opened it so that the diesel could proceed onto the main track, and signaled the engineer, who was in the engine, to proceed. The precise distance of the engine from the crossing at the moment when the switch was thrown is uncertain; estimates of witnesses varied from 70 to 240 feet. It was disputed at the trial as to whether the flashing signal lights went on and whether the bells at the road crossing started ringing immediately upon the opening of the switch. A disinterested witness approaching from the north, who had stopped his automobile for the diesel to cross, agreed with defendant in this regard, defendant's evidence being that throwing the switch automatically activated the lights.

There was also a conflict in the evidence as to whether the engineer gave the proper whistle blasts as required by Kansas statute, viz., two long and two short blasts, as the diesel approached the intersection from the "tail track." Here plaintiff's own testimony is that he had seen the engine long prior to the collision; however, as noted above it was then standing still with its rear towards the intersection.

At the time of the accident plaintiff, then a man of 68 years, whose home was in Colorado, was proceeding north on Highway 27 on his way to visit his sister, who lived nine miles north of Goodland. He testified that as

he approached the crossing he was looking westward, expecting the approach of defendant's Rocket Train, which was due at Goodland at 4:15 p.m. but unknown to plaintiff the Rocket had already traversed the intersection. He also testified that he had seen the engine on the side track but nevertheless proceeded on his way without paying much attention to it. The engineer first noticed plaintiff's automobile when it was about 400 or 500 feet south of the crossing. Thinking that the plaintiff had sufficient time to stop and would do so for the passage of the engine, the engineer proceeded to move the diesel and its car off the spur and onto the main track. Plaintiff in the meanwhile, after looking west and then east, looked west again, and as he approached the crossing at about 15 miles per hour he again looked east. He testified that he did not see anything on the main track; that he then stepped on the gas and glanced to the west. When he next looked east the engine was entering the crossing. Plaintiff then attempted to stop his automobile and to avoid the collision by backing up; however, the approaching engine moving at a very slow pace collided with the right front of plaintiff's auto and dragged it to the west side of the crossing, injuring plaintiff in the process.

Plaintiff's complaint alleged negligence on the part of defendant's employees in operating the engine and negligence on the part of the defendant in failing to provide proper safeguards at the crossing. He asserted this caused him serious bodily injury, property damage, and other losses totalling $9,990.00. Defendant answered, denying negligence and alleging contributory negligence on the part of the plaintiff. Plaintiff replied denying contributory negligence, and alternatively alleged the last clear chance doctrine.

Trial was to the court. Following presentation of plaintiff's evidence the defendant moved to dismiss and the motion was denied. At the conclusion of all of the evidence the court entered judgment for plaintiff for

$7,260.00 plus interest and costs, and dispensed with a motion for a new trial. It set forth the following conclusions of law, inter alia:

"The Court finds that * * * the defendant railroad negligently operated a Diesel locomotive * * * and that as a proximate result of the negligence of the defendant the plaintiff sustained certain injuries and damages.

"The court further finds that the plaintiff in approaching the said crossing maintained a careful lookout and approached the crossing with due caution. * * * The court finds that the operators of the defendant railroad were negligent * * * and that the plaintiff is not guilty of contributory negligence * * *."

Defendant is here by writ of error and urges the following two major grounds for reversal:

1. The evidence failed to establish negligence on the part of the defendant;

2. The evidence established that plaintiff was guilty of contributory negligence as a matter of law.

We shall determine the points in issue seriatim.

First, as to the asserted lack of negligence on the part of defendant. The facts recited as well as other evidence in the record justify a finding that defendant was guilty of negligence and the court having so found on disputed evidence, its finding will not be disturbed.

Second, as to the alleged contributory negligence of the plaintiff as a matter of law. Defendant in this regard relies heavily on *Culp v. New,* 154 Kan. 47, 114 P. (2d) 819 and on *Horton v. Atchison, T. & S. F. Ry. Co.,* 161 Kan. 403, 168 P. (2d) 928, which we will mention briefly infra.

Though we agree that Kansas law applies to this situation [Restatement, Conflict of Law, Sec. 380, comment b (1934)], we point out that neither of the above cases is determinative here. In *Culp* the plaintiff backed in front of an engine which was stopped at a downtown crossing under a different set of circumstances. *Horton* held that the failure to stop under some circumstances may constitute contributory negligence as a matter of law. In

*Ross v. Fleming*, 165 Kan. 279, 194 P. (2d) 491, (not cited in defendant's brief) it was held that a railroad is in itself a warning of danger to approaching travelers, hence their diligence must be commensurate with the hazard; and, that generally the train, not the traveler, has the right of way at a highway crossing in Kansas.

In the instant case, though the plaintiff failed to check the engine's position just before entering the crossing, reasonable men could well differ as to whether he had a duty to do so under the facts of this case. We mention a few:

Plaintiff knew of the danger from the west of a high speed train due at that time. His testimony of how he looked both ways, in view of the fact that the engine he saw to his right was stopped on the siding some distance from the crossing and headed away from it, could and was held to be reasonable by the trier of the facts. In addition, reasonable men might differ as to whether plaintiff had the right to assume that the switchman might give him warning (though he did not so testify) or as to whether the signal light actually did go on on the south side of the track.

In other words, an injured party is not to be held guilty of negligence as a matter of law when one or more facts or elements (as here) might tend to lull him into a sense of safety and cause him to perform or fail to perform the act or acts upon which the contributory negligence is sought to be predicated. See *Phillips v. Denver City Tramway Co.*, 53 Colo. 458, 128 Pac. 460, Ann. Cas. 1914 B 29.

It is only in the clearest of cases when the facts are undisputed and it is plain that all reasonable men can draw but one inference from them, that the question is one of law for the court. *Arps v. Denver*, 82 Colo. 189, 257 Pac. 1094, (1927). Or, put another way if the question provokes debate among reasonable men, whether they agree, it is for the jury. *Arps* supra. Here plain-

tiff's duty was that of ordinary and reasonable care under all the facts and circumstances.

█ Thus we conclude that, whether it is in Kansas or Colorado, every person who crosses railroad tracks does not necessarily do so at his sole risk regardless of the circumstances confronting him and the obvious negligence of the railroad. This record discloses that a trier of the facts could find that plaintiff did use due care for his safety. It is for the jury or the court, where the case is tried without a jury, to determine contributory negligence vel non on disputed evidence as a question of fact. *Kindig v. Atchison, T. & S. F. Ry. Co.*, 133 Kan. 459, 1 P. (2d) 75. Having determined that on adequate disputed evidence there was no contributory negligence, we may not disturb the finding on the theory that it should have been determined as a matter of law.

The judgment is affirmed.

MR. CHIEF JUSTICE HALL dissents.

MR. CHIEF JUSTICE HALL dissenting:

I respectfully dissent.

The facts as stated in the major opinion show that the plaintiff in approaching the crossing had an open and unobstructed view of the defendant's tracks, not only in front of him but also as they extended to his right and left. He saw the engine "long prior to the collision," and proceeded "without paying much attention to it." The engine remained in view at all times after he first saw it. He said he looked "west and then east, looked west again, and * * * again looked east." He did not see anything and "he then stepped on the gas and glanced to the west." When he next looked east the engine was entering the crossing.

The evidence offered by plaintiff, in my humble opinion, established beyond any doubt that plaintiff did not look or, if he did look, he failed to see that which was plainly visible. To state that a railroad crossing is a

place of danger is to state the obvious. Plaintiff realized the danger in approaching this crossing. He took several looks, failed to see that which loomed large right before his eyes. He is in no better position than one who does not look, shuts his eyes and steps on the gas.

Due care requires not only that one look, but that one also *see* that which is plainly visible. To look and not see does not meet the requirement of due care. Due care requires a high degree of care commensurate with the well known and recognized dangers constantly prevailing at railroad crossings.

In *Buchholz v. Union Pacific Railroad Company,* (1957) 135 Colo. 331, 311 P. (2d) 717, a very similar situation was considered and it was held that failure of a driver to see an approaching train was negligence as a matter of law, the court saying:

"It is inexplicable why this driver did not see the train approaching when he had stopped for that very purpose, and then entered upon a place known to be dangerous at a speed of four to six miles per hour, which even then would have enabled him to stop instantly. Such evidence shows a lack of due care and caution; was negligence, and a proximate cause of the accident."

And quoting from *Westerkamp v. C. B. & Q. Ry. Co.,* 41 Colo. 290, 92 Pac. 687, the following statement was approved:

"From all the facts and circumstances, there is but one conclusion deducible, viz., he did not look; because, if he had, he could not have failed to discern the train approaching the crossing he was about to drive over. * * *."

In *Fabling v. Jones,* 108 Colo. 144, 114 P. (2d) 1100, this court said:

"* * * it is certain that when plaintiff looked, the car which struck her was within the scope of her vision whether she saw it or not. To have looked in such a manner as to fail to see what must have been plainly visible was to look without a reasonable degree of care and is of no more effect than if she had not looked at all.

*Gunby v. Colorado & Southern R. R. Co.,* 77 Colo. 225, 235 Pac. 566; *Nucci v. Colorado & Southern Ry. Co.,* 63 Colo. 582, 169 Pac. 273; *Denver City Tramway Co. v. Cobb,* 164 Fed. 41, and *McLennon v. Whitney-Steen Co.,* 63 Colo. 568, 167 Pac. 771. See, also, *Mertens v. Lakeshore Yellow Cab & Transfer Co.,* 195 Wis. 646, 218 N.W. 85; *Silverstein v. Adams,* 134 Wash. 430, 235 Pac. 784, and *Chase v. Thomas,* 7 Cal. App. (2d) 440, 46 P. (2d) 200."

In *Werner v. Schrader,* 127 Colo. 523, 258 P. (2d) 766, this court said:

"The failure of a driver to maintain a proper lookout and to see what he could and should have seen on approaching or traversing a street intersection, may constitute negligence as a matter of law.

"Was young Mr. Werner contributorily negligent? Under the record in this case his negligence in failing to see defendant's automobile and to yield to it the right-of-way constituted contributory negligence sufficient to bar a recovery as a matter of law, * * *."

I subscribe to the foregoing quoted language of this court, and similar language in many other cases resolved by this court and the courts of other states and the United States.

As I view it, the majority opinion stands for the proposition, contrary to the holding of the *Buchholz* and other cases, that it is for the jury to determine whether one is acting with due care in proceeding from a safe place into a dangerous place conditional only that he look. That one who looks and fails to see that which is plainly visible is or may be exercising due care.

Such a standard of due care is, in my opinion, wholly unrealistic.

Plaintiff's conduct is an all too common example of gross, inexcusable negligence which often leads to tragic results.

The judgment should be reversed.